FILED
BILLINGS DIV.

2007 JAN 24  AM 7 40

PATRICK E. DUFFY, CLERK
BY _____
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

---

SHERI ELLIS,

        Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

CAUSE NO. CV 06-25-M-CSO

FINDINGS AND RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

---

    Plaintiff Sheri Ellis (Ellis) commenced this action seeking judicial review of the decision of Defendant Commissioner of Social Security (Commissioner), denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433, and for supplemental security income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.

    Both parties have moved for summary judgment, and the issues

PAGE 1

are fully briefed. Having considered the issues presented by the parties, together with the administrative record, the Court recommends denying Ellis's motion for summary judgment, granting the Commissioner's motion for summary judgment, and affirming the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Ellis brings this action challenging the Commissioner's decision denying her applications for benefits. She protectively filed her benefit applications in July 2002, and alleges an amended onset date of August 26, 2002. Tr. 229, 269. She claims she is disabled due to low back problems, depression, and anxiety. Tr. 132. Her applications were denied initially and on reconsideration. Tr. 73-76; 80-82; 489-92; 494-96.

After an administrative hearing held on March 15, 2005, at which Ellis appeared with counsel, an Administrative Law Judge (ALJ) found that she was not disabled within the meaning of the Act. Tr. 519-611; 15-28. The Appeals Council later denied Ellis's request for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 8-10. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported

by substantial evidence or where the decision is based on legal error. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

### III. BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

PAGE 3

period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3. The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4. If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Corrao, 20 F.3d at 946.

5. Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. Jones, 760 F.2d at 995.

PAGE 4

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. Corrao, 20 F.3d at 946.

## IV. DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Ellis had not engaged in substantial gainful activity since the August 2002 alleged onset date. Tr. 27. The ALJ next found that Ellis suffered from "right thoracic myositis, an affective disorder, not otherwise specified, and a generalized anxiety disorder, not otherwise specified, and a pain disorder associated with both psychological factors and a generalized medical condition." Id. While the ALJ determined that these impairments were severe, he found that they did not meet or medically equal any impairment described in the Listing of Impairments. The ALJ then found that "[t]he claimant's allegations of disability [were] not fully credible," and concluded that she retained the residual functional capacity to perform a limited range of light work. Id. Finally, the ALJ found at step four that Ellis was not disabled because she was capable of performing her "past relevant work as a cleaner/child monitor, drycleaner presser/sorter, and cider demonstrator." Id.

Ellis argues on appeal that the ALJ failed to cite sufficient reasons for rejecting the opinions of her treating physicians, did not consider all of her ailments, and failed to

PAGE 5

properly support his credibility determination. The Commissioner argues otherwise, and maintains that substantial evidence supports the ALJ's decision that Ellis was not disabled within the meaning of the Act because she was capable of performing her past relevant work.

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error. For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

### A. Medical Opinions

Ellis maintains that the ALJ either disregarded or failed to cite sufficient reasons for rejecting the opinions of her various treating physicians.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard the treating physician's opinion whether or not that opinion is contradicted. <u>Magallanes</u>, 881 F.2d at 751. In discounting the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). To do so, the ALJ must set forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Magallanes</u>, 881 F.2d at 751. If the treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information utilized by the treating physician, the ALJ may only reject the treating physician's opinion if the ALJ gives specific, legitimate reasons for doing so and those reasons are supported by substantial evidence in the record. <u>Andrews</u>, 53 F.3d at 1041.

The ALJ may only reject the uncontradicted opinion of a treating physician when the ALJ presents clear and convincing reasons that are supported by substantial evidence in the record. <u>Reddick</u>, 157 F.3d at 725 (quoting <u>Lester</u>, 81 F.3d at 830); <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751. A medical opinion is considered uncontroverted if all the underlying

PAGE 7

medical findings of claimant's physical impairments in the record are similar. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

### 1. Dr. Erbe

Ellis maintains that the ALJ failed to cite sufficient reasons for rejecting a letter written by her treating psychiatrist, Dr. Edward Erbe, in August 2004. *Pl.'s Br. in Support*, 6-7 (May 22, 2006). In that letter, Dr. Erbe explained that he had been treating Ellis for approximately two years, and wrote that her "primary diagnosis is a Personality Disorder, Not Otherwise Specified." Tr. 443. He indicated that Ellis "has a persistent disturbance in mood manifested by anxiety," and "has marked difficulties in maintaining concentration, persistence, and pace," as well as "marked difficulties in social functioning." Id. Ellis contends that the ALJ should have accepted the limitations set forth in Dr. Erbe's letter, and that the ALJ failed to cite sufficient reasons for not doing so.

The ALJ in fact accepted that Ellis had "marked limitation in maintaining concentration, persistence, or pace," but found that she had only moderate difficulties in social functioning, and had only one "episode of decompensation of an extended duration." Tr. 21. The ALJ specifically discussed Dr. Erbe's opinion in his written decision, but assigned some of his statements little weight based in large part on the fact that

PAGE 8

they were inconsistent with his own treatment notes and other substantial evidence of record. Tr. 22-23. For example, the ALJ observed that Dr. Erbe's opinion as to Ellis's social functioning was "inconsistent with his treatment notes, in which he clearly found she had good improvement with medications." Tr. 23. Dr. Erbe indeed noted in May 2004 that Ellis reported feeling less emotional on her medication and had "improved concentration." Tr. 481. The following month, Dr. Erbe observed that Ellis "was much less anxious and more able to concentrate" as a result of her medication, and had reported that she felt "more effective with people." Tr. 480. The ALJ properly found that such statements were inconsistent Dr. Erbe's letter, written just weeks later, in which he identified more severe limitations.

The ALJ also found the fact that Ellis was capable of working up to twenty-eight hours as a child monitor and janitor at a small private school was inconsistent with the limitations described in Dr. Erbe's letter. As the ALJ observed, Ellis "worked in close proximity with children, teachers, and other school person[nel], while helping to monitor the children." Tr. 23. Although her hours varied throughout the year, Ellis reported working fifteen hours a week in July 2004, and between twenty and twenty-eight hours a week in January 2005. Tr. 23; 426; 477. The ALJ properly cited Ellis's ability "to maintain superficial contact with many people and respond appropriately to

PAGE 9

coworkers, supervisors and the public on a limited basis" as another basis for rejecting Dr. Erbe's letter assessment. Tr. 21. These constituted sufficiently specific and legitimate reasons for rejecting portions of Dr. Erbe's letter opinion.

### 2. Dr. Davis

Ellis next argues that the ALJ should have given more weight to the opinion of her treating physician, Dr. Carla Davis. Ellis points first to a form Dr. Davis completed in February 2005, in which she assessed Ellis's mental ability to perform certain work-related activities. Dr. Davis indicated on that form that Ellis's ability to interact appropriately with the public and with supervisors was moderately limited, but that her ability to interact appropriately with co-workers was markedly limited, as was her ability to respond appropriately to work pressures and changes in a routine work setting. Tr. 475. Dr. Davis also wrote on the form that she believed Ellis "qualifie[d] for disability based on these impairments." Tr. 475.

The ALJ accepted that Ellis's ability to interact appropriately with others was moderately limited, but in doing so effectively rejected Dr. Davis's opinion that she was markedly limited in her ability to interact appropriately with co-workers. Tr. 21; 27. In addition, while the ALJ did not specifically find that Ellis's ability to respond appropriately to work pressures and changes in a routine work setting was markedly limited, he

PAGE 10

did accept that Ellis "has some compromised ability to succeed in areas requiring multiple tasks, ongoing changes in routine or the work setting, or complex problems solving." Tr. 27.

The ALJ rejected the notion that Ellis suffered from marked limitations in these areas in part on the basis that the medical expert "opined that the mental health records by Dr. Erbe did not support the marked findings assessed by Dr. Davis." Tr. 21. The ALJ also explained that he was not accepting the marked limitations noted by Dr. Davis because she "specializes in family practice" and was therefore "out of her area of expertise to make long-term assessment of [Ellis's] mental abilities to perform work-related activities." Tr. 24. The ALJ instead gave more weight to Dr. Erbe's outpatient treatment reports, which indicated that Ellis showed significant improvement with medication. Tr. 20; 421-423. See Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995) (an ALJ may give greater weight to the opinion of a specialist over that of a general practitioner); 20 C.F.R. § 416.927(d)(5)). The ALJ also cited Dr. Davis's generalized practice as a reason for rejecting her opinion that Ellis would qualify for disability based on her mental impairments. Tr. 24. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (stating that a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability"); 20

PAGE 11

C.F.R. § 404.1527(e). These constitute sufficiently specific and legitimate reasons for rejecting Dr. Davis's assessment.

Ellis also argues that the ALJ's analysis of Dr. Davis's opinion regarding her physical abilities was flawed. Specifically, Ellis apparently takes the position that the ALJ erred by citing several reasons for rejecting Dr. Davis's opinion, and then adopting it in full. But review of the record shows that the ALJ in fact found that Ellis retained greater physical capabilities than those noted by Dr. Davis. Tr. 27; 470-73. For example, Dr. Davis indicated that Ellis could lift ten pounds occasionally and less than ten pounds frequently, but the ALJ found she retained the greater ability to lift up to twenty pounds occasionally and ten pounds frequently. Tr. 27; 470. In addition, while Dr. Davis found that Ellis could stand and/or walk at least two hours in an eight-hour workday, the ALJ found she could do so for six hours. Tr. 27; 470. Finally, Dr. Davis indicated that Ellis could never crawl or stoop, but the ALJ found she could do so frequently. Tr. 27; 470. It is clear that the ALJ did not, as Ellis suggests, adopt Dr. Davis's opinion. He instead rejected it and cited several reasons for doing so, which are challenged by Ellis. Among those reasons was the fact that Dr. Davis indicated in March 2004 that Ellis's back pain was "out of proportion to her injury," and stated that "[s]he should be able to perform light duty, full-time work, so I

PAGE 12

would not put her on any other work restrictions." Tr. 450; 23-24. Ellis fails to explain how the ALJ's evaluation of Dr. Davis's records and opinions was erroneous.

### 3. Dr. Sechrest

Ellis also argues very briefly that the ALJ failed to discuss records from Dr. Randale Sechrest, who apparently examined her twice in November 2003. Tr. 465-69. *Pl.'s Br. in Support*, 6 n.2 (May 22, 2006). Review of the ALJ's decision, however, shows that he did in fact consider these records. Tr. 17-18. Ellis fails to explain how that evaluation was flawed, or what the ALJ should have done differently. Because Ellis identifies no error on the ALJ's part, her argument fails.

### 4. Other Medical Evidence

Ellis similarly contends that the ALJ failed to consider her "chronic back pain syndrome" and ignored the fact that she had been diagnosed with myositis. *Pl.'s Br.*, 10-11. Again, however, it is clear from the ALJ's decision that he did in fact consider the evidence Ellis complains he ignored. For example, the ALJ refers throughout his written decision to Ellis's complaints of back pain, and even found that her right thoracic myositis constituted a severe impairment. Tr. 17-27. Ellis fails to explain how the ALJ's evaluation was flawed.

Ellis also maintains that the ALJ misconstrued the testimony of medical expert Dr. Paul Bach. According to Ellis, Dr. Bach

PAGE 13

did not rule out the possibility that her condition would meet or equal the criteria of a listed impairment. She contends the ALJ erred by relying on Dr. Bach's testimony to support his step three determination that she did not satisfy one of the listed impairments. This Court concludes otherwise.

Dr. Bach indeed indicated, as the ALJ found, that Ellis's condition did not specifically satisfy the B criteria of Listings 12.04, 12.06, or 12.07. Tr. 575-80. To satisfy the B criteria of those listings, a claimant must demonstrate at least two following: (1) marked restriction of activities of daily living, or (2) marked difficulties in maintaining social functioning, or (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration.

Although Dr. Bach testified that Ellis had marked difficulties in maintaining concentration, persistence, or pace, he further testified that she had only moderate difficulties in maintaining social functioning, no restriction of activities of daily living, and no repeated episodes of decompensation. Tr. 576-77. While Dr. Bach acknowledged he found it difficult to comment on her ability to maintain social functioning, he found that she was only moderately limited in light of the fact that she has "maintained a relationship with her employer of some warmth and flexibility over the years,...attends church once in

awhile, [and] "has a good relationship with her son." Tr. 576. The ALJ did not err in relying on Dr. Bach's testimony, in conjunction with the other medical evidence of record, in finding that Ellis's condition did not satisfy a listed impairment.

Ellis next argues that Dr. Bach's testimony was flawed, and suggests that the ALJ thus erred by relying on his opinion. Specifically, Ellis contends that Dr. Bach erred by ignoring Dr. Erbe's August 2004 letter, in which he stated that Ellis's "primary diagnosis is a Personality Disorder, Not Otherwise Specified." Tr. 443. Dr. Bach recognized that diagnosis, and noted that it was a "personality disorder characterized by anxiety," which Dr. Bach opined had already been taken into account by virtue of the "several other anxiety disorders noted." Tr. 573. The record shows that Dr. Bach adequately considered Ellis's anxiety, as did the ALJ who ultimately found that her "generalized anxiety disorder, not otherwise specified," constituted a severe impairment. Tr. 27.

### B. **Credibility**

Ellis argues the ALJ failed to cite sufficiently clear and convincing reasons for rejecting her testimony as to the extent of her pain and limitations.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the

PAGE 15

claimant's credibility as to the severity of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the Cotton test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. Smolen, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the

PAGE 16

factors set forth in SSR 96-7p including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; see also 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Ellis suffers from "right thoracic myositis, an affective disorder, not otherwise specified, a generalized anxiety disorder, not otherwise specified, and a pain disorder associated with both psychological factors and a generalized medical condition." Tr. 27. The medical records support the ALJ's finding in this regard, and establish that Ellis's impairments can reasonably be expected to produce some degree of symptom. Tr. 272-462. Ellis has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ acknowledged Ellis's testimony as to her pain and

PAGE 17

limitations, but found it less than entirely credible for a number of reasons. Tr. 24-26. First, the ALJ found the fact that Ellis had "continued to work in her position at the school since 2000," was inconsistent with her allegations of total disability. As the ALJ noted, Ellis testified that "she works all the hours that are available to her," she would work mor hours if they were available, and she had "told school personnel that she could work more hours." Tr. 24; 560. The ALJ properly relied on the fact that Ellis worked as many as twenty-eight hours a week during the school year, and had earnings that fell just short of qualifying as substantial gainful activity, in discrediting her testimony as to the extent of her pain and limitations.

Second, the ALJ also found that evidence of Ellis's daily activities was inconsistent with her allegations of disability. Specifically, the ALJ noted that Ellis reported in July 2002 that her daily activities included cleaning "the school five days a week from 4:30 a.m. to 7:30 a.m.," doing housework, yard work, cooking, practicing typing, looking for work, and attending appointments." Tr. 25; 148. She also reported doing laundry, car maintenance, grocery shopping, camping on weekends, swimming, biking, stretching, and practicing yoga. Tr. 25; 148. The ALJ properly found the fact that Ellis engaged in these daily activities undermined her allegations of total disability. See

Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that claimant's level of activities undermined her subjective complaints of pain).

Finally, the ALJ found that Ellis's receipt of unemployment benefits was inconsistent with her allegations of disability, because an "individual receiving unemployment is agreeing that she is ready, willing, and able to work." See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)(stating that a claimant who received unemployment insurance benefits apparently considered himself capable of working and held himself out as available for work).

The Court concludes that these constitute clear and convincing reasons for finding Ellis's testimony not entirely credible.

## V. CONCLUSION

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision, which is free of legal error. Therefore,

**IT IS RECOMMENDED** that Ellis's Motion for Summary Judgment be **DENIED**, the Commissioner's Motion for Summary Judgment be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings

must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 24th day of January, 2007.

_____
Carolyn S. Ostby
United States Magistrate Judge